IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

       Plaintiff,

  v.

CHARLES BLYSTONE,

       Defendant.

Criminal No. 20-0220
ELECTRONICALLY FILED

## MEMORANDUM OPINION

Before the Court is Defendant's motion for reduction of sentence which he filed pursuant to 18 U.S.C. § 3582(c)(2). ECF 77. The Government filed a response opposing Defendant's requested reduction. ECF 79. For reasons set forth below, this Court will deny Defendant's motion.

### I. Case History

**A. Defendant's 2020 Case (2:20-cr-00220)**

Because the Court writes primarily for the parties, the case history will be truncated. All facts below, unless otherwise stated, are set forth in Defendant's presentence investigation report (to which no objections were raised by either party) filed in the instant case. ECF 65.

On January 29, 2020, the Pennsylvania State Police ("PSP") were called by a victim's mother who found her son lying face down and unresponsive. The victim was deceased. Upon arrival, the PSP observed a used syringe and a stamp bag marked "Thundercats" lying by the deceased victim. The victim's mother told the PSP that her son had been released from rehab the day before, and that she had driven him to "Chucky's" house (which she identified as a residence

located at 329 Sportsman Road) upon his release. She also told the PSP that "Chucky" had a previous residence located at 1860 Freeport Road. The PSP retrieved and searched the victim's cell phone and noted that numerous calls were to an individual identified in the phone as "Blystone." At this point, the PSP surmised that "Chucky" was Defendant, Charles Blystone.

The next day, on January 30, 2020, the PSP were dispatched to a second location where they had to administer Narcan to a victim due to an overdose. At this location, the PSP discovered used and full stamp bags marked "Thundercats" and this victim told the PSP he received those bags from "Chucky" and Devon Dixon.

The PSP then secured search warrants for the two addresses the first victim's mother provided. At the Sportsman Road address, the PSP found multiple empty stamp bags with "Thundercats" imprinted on them, and at the Freeport Road location, the PSP found Defendant hiding in a closet, as well as 16 grams of fentanyl inside stamp bags marked "Thundercats," a large amount of marijuana, and numerous other items of paraphernalia including digital scales, multiple cell phones, and cash. Devon Dixon was also observed fleeing from the Freeport Road residence the day the search warrant was executed, but he was apprehended and detained by the PSP.

During questioning by the PSP, Defendant admitted to suppling both the January 29th and the January 30th victims with stamp bags that he said he received from Dixon. All of the drugs that were seized tested positive for fentanyl, and fentanyl was found in the first victim's (the decedent's) bloodstream, and the second victim also tested positive for fentanyl.

**B. Defendant's 2014 Case (2:14-cr-00132)**

Defendant was serving his term of federal supervision at the time the above-described offenses occurred. See case number 2:14-cr-00132 ("the 2014 case"). Defendant's term of federal supervision stemmed from his August 21, 2015 guilty plea pursuant to a plea agreement with the Government to a lesser included offense of conspiracy to distribute and possess with the intent to distribute 100 grams or more of a mixture and substance containing a detectable amount of heroin. He was sentenced to 60 months imprisonment (which was a mandatory minimum) and 4 years of supervised release for this offense. Because he was under federal supervision at the time he committed the offenses described above in the 2020 case, a Supplemental Petition for Warrant or Summons for Offender under Supervision was filed in the 2014 case, indicating that Defendant violated two provisions of his supervision, specifically: (1) the Defendant shall not commit another federal, state or local crime; and (2) the Defendant shall not illegally possess a controlled substance.

Because Defendant was facing new charges in the 2020 case, as well as violations of his federal supervision in the 2014 case, Defendant entered to a binding plea agreement with the Government which addressed all of the charges and violations – both the new charges filed in his 2020 case, as well as the violations filed in his 2014 case. This plea agreement contained the following language:

> Pursuant to Rule 11(c)(l)(C), the parties stipulate and agree that the appropriate sentence in these cases is:
>
> a. a term of imprisonment of 46 months, at Crim. No. 20-220, to run consecutively to a term of imprisonment of 37 months at Crim. No. 14-132;
>
> b. a term of supervised release of six years at Crim. No. 20-220, to run concurrently to a term of supervised release of six years at Crim. No. 14-132;

      c.    a fine, if any, in an amount to be determined by the Court at Crim. No. 20-220; and

      d.    a special assessment of $300.00 at Crim. No. 20-220.

Consistent with Rule 11 (c )(1 )(C), the Court may accept the plea agreement, reject the plea agreement, or defer a decision until it reviews the presentence report. If the Court rejects the plea agreement, consistent with Rule 11(c)(5), the defendant will have the opportunity to withdraw his guilty plea.

The parties further agree that no other enhancements, departures or variances are applicable or appropriate.

<u>Defendant agrees that he will not file a motion seeking relief under 18 U.S.C. § 3582(c)(2) if the Sentencing Guidelines are subsequently lowered by the Sentencing Commission.</u>

ECF 53-1 (emphasis added).

## II. Analysis

The issue for this Court to resolve at this time is whether Defendant's plea agreement which contained an 11(c)(1)(C) provision (set forth above in its entirety), whereby Defendant and the Government agreed that the appropriate term of imprisonment was 46 months, in the 2020 case, to run consecutively to a term of imprisonment of 37 months in the 2014 case, should prevail, given the retroactive application of Amendment 821 which would have the effect of reducing Defendant's guideline range in the 2020 case.

This issue is easily resolved in this case, because Defendant's sentence of 46 months at each of three counts to run concurrently in the 2020 case, all to run consecutively to a term of imprisonment of 37 months in the 2014 case, was <u>not</u> a sentence this Court devised predicated upon Defendant's guideline range; rather, it was based solely upon the binding language of his 11(c)(1)(C) plea agreement that the Government and Defendant entered into, and which this Court approved and accepted. In addition, Defendant agreed in the plea agreement that he would

not file this sort Motion. Finally, the application of the § 3553 factors do not support such a reduction.

The United States Court of Appeals for the Third Circuit in *United States v. Sanchez*, 562 F.3d 275 (3d Cir. 2009), determined that a binding plea agreement, upon which a District Court bases its sentence, is binding no matter what changes occur to the guideline range following the acceptance of that agreement and the issuance of the corresponding sentence by the District Court. The Court in *Sanchez* specifically stated:

> Sanchez's sentence was the result of a binding plea agreement and is therefore not subject to reduction under 18 U.S.C. § 3582(c)(2).
>
> \*   \*   \*
>
> "Plea agreements, although arising in a criminal context, are analyzed under contract law standards." *United States v. Nolan-Cooper*, 155 F.3d 221, 236 (3d Cir.1998) (citing *United States v. Moscahlaidis*, 868 F.2d 1357, 1361 (3d Cir.1989)). Under 18 U.S.C. § 3582(c)(2), a court may reduce the prison term of a "defendant who has been sentenced ... based on a sentencing range that has subsequently been lowered by the Sentencing Commission...." While we have not applied this provision to a defendant in Sanchez's situation, at least three Circuit Courts have concluded that a sentence prescribed in a binding plea agreement is not "based on" a subsequently lowered sentencing range. We find their reasoning to be persuasive.
>
> \*   \*   \*
>
> Here, the record shows that Sanchez was sentenced based on a binding plea agreement under Rule 11(e)(1)(C) and not on a range from the Sentencing Guidelines.

562 F.3d at 279-80, 282.

The Court acknowledges that, more recently, in *Hughes v. United States*, 584 U.S. 675 (2018), the United States Supreme Court held that even in the face of an 11(c)(1)(C) plea agreement a reduction <u>may be</u> warranted in accordance with 18 U.S.C. §3582(c)(2). *Id.,* at 686 (emphasis added) ("A sentence pursuant to [an 11(c)(1)(C)] agreement is no exception to the

5

general rule that a defendant's Guidelines range is both the starting point and a basis for his ultimate sentence."). However, although the Supreme Court in *Hughes* determined that in most cases, even 11(c)(1)(C) cases, the Guideline Range is the starting point and/or basis for the original sentence, the Court noted, "If the Guidelines range was not 'a relevant part of the analytic framework the judge used to determine the sentence or to approve the agreement,' *Freeman, supra*, at 530, 131 S.Ct. 2685, then the defendant's sentence was not based on that sentencing range, and relief under § 3582(c)(2) is unavailable." *Hughes*, 584 U.S. at 687 (emphasis added).

### A. Basis for the Original Sentence

Turning to the instant matter, Defendant agreed to serve 46 months at each of three counts to run concurrently, which is a specific term of imprisonment, and which this Court accepted, despite the fact that this term could either be viewed as well above or well below the guideline range. The guideline range prior to Amendment 821, and to which the parties agreed, was 30 to 37 months imprisonment at each of the three counts. Without the 11(c)(1)(C) provision in Defendant's plea agreement this Court could have decided to run Defendant's term of imprisonment at each count concurrently for a total of anywhere from 30 to 37 months. Again, without the 11(c)(1)(C) provision in Defendant's plea agreement in the 2020 case, this Court could have decided to run Defendant's term of imprisonment at each count consecutively, and thus, Defendant could have been ordered to serve a term imprisonment for 90 months (at the lowest end of that range) or 111 months (at the high end of the range).

However, the record shows that this Court did not rely upon the guideline range when it accepted the plea deal in this case; instead, it relied upon the facts specific to this case, and determined that the agreed upon "46 months at each count to be served concurrently" in the 2020

case was the right term of imprisonment <u>given that Defendant would serve that term consecutive to a 37-month term of imprisonment for his supervised release violations in the 2014 case</u>.

Stated another way, the Court accepted the parties' agreed upon sentence of 46 months at each of three counts, to run concurrently, in the 2020 case (see ECF 71), because Defendant was on supervised release for yet another drug-related crime when he committed the 2020 offenses and agreed to serve 37 months' imprisonment for those violations. In addition, as noted in the fact section above, at the time of his sentencing in the 2020 case, this Court was aware that Defendant's criminal activity in the 2020 case led to the death of one of the two victims. Furthermore, Defendant was facing – statutorily – a maximum sentence of 360 months imprisonment in the 2020 case, and – using the guideline range – if the Court ran Defendant's term of imprisonment consecutively, Defendant could have received 90 months imprisonment on the lowest end of the guideline range or 111 months on the highest end of the range, ***if*** this Court had considered the guideline range as the basis for this Defendant's sentence. The Court did not.

As noted above, at the time of Defendant's original sentence for the crimes to which he pled guilty in the 2020 case, the Court also had to consider the fact that Defendant had violated two requirements of his supervised release in the 2014 case. Thus, this Court fashioned a sentence with <u>both</u> cases in mind. After careful consideration, this Court was satisfied with the agreed-upon terms of imprisonment set forth in the parties' 11(c)(1)(C) plea agreement because the agreement accounted for an additional 46 months to be served for the 2020 offense, <u>consecutive</u> to the 37 months for Defendant's supervised release violation related to his 2014 offense, for total of 83 months' imprisonment between the two cases.

**B. The Exclusionary Clause in the Plea Agreement**

Next, this Court further notes that in exchange for a 46-month sentence in his 2020 case, and a 37-month sentence in his 2014 case, to run consecutively, Defendant specifically agreed that he would not file the instant "motion seeking relief under 18 U.S.C. § 3582(c)(2)" even if "the Sentencing Guidelines were subsequently lowered by the Sentencing Commission." ECF 53-1, p. 5.  It is apparent to this Court that the instant motion flies in the face of that portion of his plea agreement.  As the Court of Appeals for the Third Circuit noted in *Sanchez,* "[i]f 'binding' is to have meaning, it cannot be undone by the discretionary possibility of a different sentence under § 3582(c)," 562 F.3d at 282 (3d Cir. 2009), especially when there is a very specific clause in Defendant's instant plea agreement which indicated that Defendant was, in essence, waiving his right to seek the relief he now requests. The Court declines to simply ignore that contractual promise made by Defendant.

**C. The Application of the §3553 Factors**

Finally, the Court finds that the § 3553 factors weigh against reducing Defendant's 46-month term of imprisonment.  The 2020 offenses were egregious especially considering that one of the victims died, and Defendant's criminal conduct was -- at the least -- an indirect cause of the victim's death. Defendant's criminal history is replete with drug-related crimes, and he was on federal supervision from a 2014 drug-related crime when he committed the instant 2020 offenses.  Committing the 2020 crimes while on supervised release also demonstrates to this Court that Defendant has little or no respect for the law, and is not easily deterred from re-offending. Finally, in light of his 2020 crimes which involved fentanyl and the death of one of the victims, public protection also weighs heavily in favor of maintaining the original sentence.

8

In sum, the record in this case shows that this Court sentenced Defendant solely based upon the terms which were clearly set forth in Defendant's binding plea agreement (ECF 53-1), which Defendant entered in accordance with Rule 11(c)(1)(C), and <u>not</u> upon Defendant's Sentencing Guideline range. The record further supports a finding that Defendant contracted away his rights to even bring the instant motion. Finally, the § 3553 factors do not support a reduction in Defendant's 46-month term of imprisonment in the 2020 case.

### III. Conclusion

Based on the foregoing law and authority, and: (1) because Defendant had a binding plea agreement upon which this Court based on Defendant's original sentence of 46 months in the 2020 case, to run consecutive to the 37 months in the 2014 case, and not on the then-guideline range, (2) because Defendant's plea agreement specifically waived the right to file a this motion for relief under 18 U.S.C. § 3582(c)(2), and (3) because the §3553 factors do not support a reduction, the Court finds that Defendant is not eligible for relief under Amendment 821, and therefore, will deny his motion to reduce his sentence. An Order of Court denying Defendant's motion shall be filed contemporaneously herewith.

s/Arthur J. Schwab  
ARTHUR J. SCHWAB  
United States District Judge

Dated: March 15, 2024

cc:     All ECF Registered Counsel of Record